ANCONA PRINTING COMPANY v. WELSBACH COMPANY.

Decided November 24, 1924.

Lease of Property—Alleged Failure to Keep Property in Due Repair—Alleged Wrongful Removal of Certain Fixtures—Allegations Denied and Judgment for Plaintiff—Impossible to Demonstrate Method of Arriving at Amount of Payment—Rule Made Absolute.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the rule, *Bleakly, Stockwell & Burling.*

*Contra, Wescott & Weaver.*

PER CURIAM.

The defendant company was a tenant of the plaintiff, occupying a plant belonging to the latter at Gloucester City. It was in possession of the premises in 1905 and subsequently, under a ten-year lease, which ran from March 1st, 1905, to June 30th, 1915. This lease was extended for a period of a year. The present suit was instituted by the plaintiff to recover from the defendant company—first, compensation for

failure to keep the leased premises in proper repair during the continuance of the lease, in accordance with the provisions thereof, and until the end of the defendant's occupation thereof; and second, compensation for the wrongful removal and wrongful appropriation by the defendant of certain fixtures installed in the plant, the ownership of which, as claimed by the plaintiff, was in it. The defense was that there had been no breach by the defendant of the covenant to repair, and that the fixtures removed by it from the plant after the termination of the lease belonged to it, and not to the plaintiff, and that, by the terms of the lease, their removal was legally justifiable. The jury returned a general verdict in favor of the plaintiff for $25,237.

Just how the sum awarded by the jury was arrived at is not capable of demonstration. It is significant, however, that the plaintiff, in support of its claim, offered in evidence an estimate of the cost of putting the plant in proper repair and of replacing the fixtures alleged to have been wrongfully removed and appropriated by the defendant, and this estimate was based upon testimony submitted by the plaintiff in support of its accuracy. The following is a condensed statement of that estimate: (1) Estimate of the cost of putting the buildings in proper repair, $21,969; (2) estimate of the cost of replacing shafting claimed to have been the property of the plaintiff, but removed by the defendant, $6,209.20; (3) estimate of the cost of replacing the sprinkler system, claimed to have been the property of plaintiff, but removed by the defendant, $12,470; (4) estimate of replacing gas lighting system, claimed to have been the property of plaintiff, but removed by the defendant, $3,268.

There was also a claim for the cost of replacing an electric lighting system, which had been removed by the defendant, but this claim apparently was abandoned at the trial. It will be observed that the cost of repairing the buildings, plus the cost of replacing the gas lighting system, as estimated by the plaintiff's witnesses, together make up the exact amount of the jury's award, and it seems reasonable to sup-

pose, in view of that fact, that the jury reached the conclusion that the claim of the plaintiff that the shafting and the sprinkler system which were taken away from the plant by the defendant were unlawfully removed by it was not justified. Whether this be a fair analysis of the verdict or not, it must be conceded that a considerable part of it is based upon the cost of repairing the buildings and the plant, and to this extent, we think, the verdict cannot be justified. The covenant in the lease with relation to repairs was that the defendant should and would, during the continuance of the lease, keep, and, at the termination thereof, deliver up said premises in as good order and repair as of the day of the date of the lease, reasonable wear and tear, acts of God and public enemies and accidents by fire excepted; and would keep the roofs, the glazing, &c., in proper repair, including the necessary painting in order to properly preserve the buildings. The obligation, therefore, rested upon the plaintiffs to prove not only that the buildings upon the premises were not in a proper state of repair at the time of the surrender of the plant to it by the defendant, but also the state of repair of these buildings at the time of the making of the lease, for the obligation of the lease was not to surrender possession at the termination of the lease of these buildings in proper repair, but only in as good order and repair as they were in at the time of the making of the lease; and at the time of the making of the lease, many of the buildings were more than a quarter of a century old. This second factor the plaintiff failed to prove—that is, the condition of the premises as to repair at the time of the making of the lease— and so, for aught that appears to the contrary, the premises may have been in quite as good a state of repair at the time when possession was turned over to the plaintiff as they were at the time when the term fixed by the lease began to run. In the absence of the proof indicated, we think this verdict cannot be sustained so far as it relates to the item of repairs to the buildings.

The rule to show cause, therefore, will be made absolute.